**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NATIONAL SURETY CORPORATION : | CIVIL ACTION NO. |
| a/s/o PETER AND MARCELLA LEONE : | 3:10-CV-1330 (JCH) |
|     Plaintiff, : | |
| : | |
| v. : | |
| : | |
| MINCHIN BUICK PONTIAC GMC, INC. : | JULY 26, 2011 |
| ET AL., : | |
|     Defendants. : | |

**RULING RE: DEFENDANT PROTECTION ONE ALARM MONITORING INC.'S
CONVERTED MOTION FOR SUMMARYJUDGMENT [Doc. No. 15]**

**I.    INTRODUCTION**

On August 20, 2010, National Surety Corporation ("National Surety"), as subrogee of Peter and Marcella Leone, brought this action against defendants Minchin Buick Pontiac, Inc. and Protection One Alarm Monitoring, Inc. ("Protection One").[1] On October 28, 2010, Protection One filed a Motion to Dismiss the four counts of the Complaint in which it is named. On June 13, 2011, the court dismissed Count Six of the Complaint for failure to plead fraud with particularity. See Ruling (Doc. No. 50). Count Three (negligence), Count Four (breach of warranties), and Count Five (breach of contract) remain pending against Protection One. See id. At the request of National Surety, and pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the court has converted the remaining aspects of the Motion to Dismiss into a Motion for Summary Judgment. See Notice (Doc. No. 51). The parties have been provided with

---

[1] Counsel for Protection One indicates in its Motion to Dismiss that the proper name for the corporation is Protection One Alarm Monitoring, Inc. In this Ruling, the court will refer to the defendant simply as "Protection One."

"a reasonable opportunity to present all the material fact that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the reasons that follow, the court now grants Protection One's converted Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' " Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir.

2

2008) (stating that a non-moving party must point to more than a mere " 'scintilla' " of evidence in order to defeat a motion for summary judgment) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).  In this case, there are no genuine issues of material fact to be tried, and the court is able to adjudicate Protection One's Motion for Summary Judgment as a matter of law.

## III. FACTUAL BACKGROUND

### A. <u>Effect of Conversion to Motion for Summary Judgment</u>

In its Motion to Dismiss, Protection One attached an alarm monitoring contract ("Monitoring Contract") signed by the Leones and Westec Security Systems in September 2001.  Protection One asserted that it is the "successor to Westec [Security Systems] under the [Monitoring Contract]."  Reply Mem., at 3.  At oral argument on June 7, 2011, counsel for National Surety twice represented to the court that it had not seen the Monitoring Contract before drafting the Complaint and therefore did not rely upon it.[2]  <u>See</u> Hearing Tr. (Doc. No. 62) at 13, 18-19.

National Surety further stated that the court must consider facts outside the pleadings to ascertain whether Protection One is the successor to Westec Security Systems under the Monitoring Contract.  Accepting National Surety's representation that it did not rely on the Monitoring Contract in drafting the Complaint, the court concluded that the Monitoring Contract was a document outside of the pleadings and that the court therefore could not consider the Monitoring Contract in the context of a Motion to Dismiss.  Notice (Doc. No. 50) at 2.

---

[2] It bears noting that Protection One has now presented undisputed evidence that it produced a copy of the Monitoring Contract to National Surety, at National Surety's request, more than two months before National Surety filed its Complaint.  Protection One's Local Rule 56(a)(1) Statement (Doc. No. 58), ¶¶ 24-25.

3

The court thereafter converted the Motion to Dismiss into a Motion for Summary Judgment and provided the parties with an opportunity to present all the material facts that are pertinent to the converted Motion for Summary Judgment. The court ordered Protection One to submit a Local Rule 56(a)(1) Statement in support of the converted Motion for Summary Judgment. See D. Conn. L. Civ. R. 56(a)(3). The court further ordered National Surety to submit a Local Rule 56(a)(2) Statement, as well as any supplemental briefing in opposition to the Motion for Summary Judgment, within 21 days of Protection One's submission. On June 27, 2011, Protection One filed its Local Rule 56(a)(1) Statement. See Protection One's Local Rule 56(a)(1) Statement (Doc. No. 58) (hereafter "Protection One's 56(a)(1)"). On July 19, 2011, the deadline passed for National Surety to submit its Local Rule 56(a)(2) Statement, but National Surety did not file anything.

Under the Local Rules, "[a]ll material facts set forth in [a Local Rule 56(a)(1) Statement] and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)(2)." D. Conn. L. Civ. R. 56(a)(1). Accordingly, Protection One's facts are deemed admitted, to the extent they are supported by the record.

B.  Factual Findings[3]

National Surety provided insurance coverage to Peter and Marcella Leone for real and personal property located at their residence, 1181 Rock Rimmon Road, Stamford, Connecticut.  Compl., ¶ 7.  Protection One designed, installed, serviced, tested, maintained, and monitored a security and fire alarm system at the Leone residence.  Compl., ¶ 11.  Protection One provided these services pursuant to a written agreement with the Leones.  Compl., ¶¶ 11, 40-41; Monitoring Contract, Protection One's Mot. to Dismiss (Doc. No. 15, Ex. B); First Amendment to Monitoring Contract (Doc. No. 28, Ex. 4) (hereafter "First Amendment"); Second Amendment to Monitoring Contract (Doc. No. 28, Ex. 3) (hereafter "Second Amendment"); Protection One's 56(a)(1), ¶¶ 6, 28-31.[4]  The original Monitoring Contract was entered into between Westec Security Systems and the Leones on September 18, 2001.  Protection One's 56(a)(1), ¶ 6.  Westec Security Systems is listed as the dealer on the Monitoring Contract because Protection One operated in the name of Westec at the time the Monitoring Contract was executed, under the terms of a franchise agreement between Protection One and Westec.  Protection One's 56(a)(1), ¶¶ 8, 10-14.  The franchise agreement with Westec terminated on July 20, 2004, and Protection One subsequently operated in its own name.  Protection One's 56(a)(1), ¶ 35.  The original Monitoring

---

[3] On the basis of Protection One's Local Rule 56(a)(1) Statement and accompanying exhibits, the court finds the following facts.  Protection One's Local Rule 56(a)(1) Statement focuses on the disputed issue of whether Protection One is the successor to Westec Security Systems under the September 2001 Monitoring Contract.  For those facts not addressed in Protection One's Local Rule 56(a)(1) Statement, the court assumes that the facts alleged in National Surety's Complaint are true.  The court is able to engage in this presumption, because even assuming such facts alleged in the Complaint are true, National Surety's claims against Protection One still fail.

[4] Collectively, the Monitoring Contract, the First Amendment, and the Second Amendment will be referred to as "the Agreement."

5

Contract identifies the Leone account by customer number 27939610 and site number 2618090, which are the same numbers in Protection One's files for the Leone account. Protection One's 56(a)(1), ¶ 22. The Leones paid Protection One on a periodic basis for its services. Compl., ¶¶ 11-12; Monitoring Contract, at 1.

Marcella Leone signed the Monitoring Contract on September 17, 2001, and Protection One, operating as Westec Security Systems, approved the contract on September 18, 2001. Monitoring Contract, at 1; Protection One's 56(a)(1), ¶¶ 6, 11. The original term of the Monitoring Contract was five years, followed by automatic renewals for additional terms of one year absent a written cancellation by the customer. Id.

The Monitoring Contract included the statement:

You acknowledge that we are not required to, or responsible for, testing or inspecting the System unless you have separately contracted for this service, and that you are responsible to check the System at regular intervals to insure [sic] proper operation.

Monitoring Contract, at 1.

On the first page of the Monitoring Contract, the following warning language is found:

IF YOU ARE A RESIDENTIAL CLIENT, YOU MAY CANCEL THIS CONTRACT AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY FROM THE DATE OF THIS CONTRACT. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

Monitoring Contract, at 1. A Notice of Cancellation is located on the third page of the Monitoring Contract. It provides, in pertinent part: YOU MAY CANCEL THIS TRANSACTION WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE. Monitoring Contract, at 3. The

Monitoring Contract was originally on legal size paper but was shrunk to letter size for archival purposes. Protection One's 56(a)(1), ¶ 23.

The Monitoring Contract contains an agreement that the Leones could not bring any action against Protection One after one year had elapsed. Specifically, the Contract provides:

> All actions, legal or equitable, against us must be commenced in court within one (1) year after either the cause of action has accrued or the act, omission or event occurred from which the action arises, whichever is earlier, without judicial extension of time, or such action is barred, time being of the essence of this paragraph.

Monitoring Contract, at 2, § 16; Protection One's 56(a)(1), ¶ 19.

The Monitoring Contract also contains a waiver of the Leones' right to pass causes of action against Protection One to their insurer via subrogation:

> In case of damage or destruction to your premises or property by any cause within the scope of your insurance, whether such damage was caused by us, or any party for whom we may be responsible under the Contract, you agree that your insurer shall not look for reimbursement to us, or our agents, employees or assigns or to any third party against whom you may have a claim therefor.

Monitoring Contract, at 2, § 19; Protection One's 56(a)(1), ¶ 20.

The Monitoring Contract contains an express limitation on damages. The Leones agreed that Protection One is "not an insurer and that you must obtain insurance, if any, covering personal injury and property loss or damage on your premises and that the payments provided for herein are based solely on the value of the services as set forth herein and are unrelated to the value of your property or the property of others that may be located at your premises." Monitoring Contract, at 2, § 14(A). The Leones represented that they had adequate insurance to protect their premises and property. Id. The limitation clause states that if Protection One is:

7

> Found liable for any loss or damage resulting from the products or services to be provided under this Contract, our LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO THE TOTAL OF ONE-HALF YEAR'S MONITORING PAYMENTS OR FIVE HUNDRED DOLLARS ($500), WHICHEVER IS LESS, and this liability shall be exclusive and shall apply if loss or damage . . . results directly or indirectly . . . from a failure of the System or performance or nonperformance of any of our obligations and shall apply whether such claim is for negligence, gross negligence, misfeasance, nonfeasance, express or implied warranty, strict or product liability, breach of contract, contribution or indemnification, or any other legal claim against us, our employees, agents or assigns. WE SHALL NOT BE LIABLE FOR ANY GENERAL, DIRECT, SPECIAL, EXEMPLARY, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES.

Monitoring Contract, at 2, § 14(C).

Finally, the Monitoring Contract contains a merger clause, explaining that the Contract "represents the entire agreement of the parties." Monitoring Contract, at 2, § 21.

The First Amendment to the Monitoring Contract was executed on October 18, 2005, as part of a service work order. First Amendment, at 1; Protection One's Local Rule 56(a)(1), ¶ 28. The Second Amendment to the Monitoring Contract was executed on May 14, 2008. Second Amendment, at 1; Protection One's Local Rule 56(a)(1), ¶ 28. Both Amendments bear headers with the name and logo for Protection One. Id. The First Amendment also refer to "Westec" at the top of the first page. Protection One's Local Rule 56(a)(1), ¶ 33. The Amendments bear the same customer number and site number as the Monitoring Contract. Protection One's Local Rule 56(a)(1), ¶ 32.

Both Amendments state that they "supplement[] and amend[] your alarm monitoring agreement with us (Protection One), and constitute[] an addendum to said agreement. . . . The terms of your alarm monitoring agreement, as modified hereby remain in full force and effect." First Amendment, at 2; Second Amendment, at 2;

Protection One's Local Rule 56(a)(1), ¶ 29. Both Amendments contain a 30 day warranty for any parts repaired or replaced as part of the service work order. Id. The Amendments also contain a reiteration of the Monitoring Contracts statement that Protection One is "NOT AN INSURER OF YOU, OTHER PERSONS LIVING IN, OR PRESENT AT YOUR PREMISES, OR YOUR PREMISES OR ITS CONTENTS." Id. The Amendments warn that "YOUR SYSTEM AND OUR SERVICES MAY NOT ALWAYS OPERATE AS INTENDED FOR VARIOUS REASONS, INCLUDING OUR NEGLIGENCE OR OTHER FAULT." The Amendments provide that the Leones' exclusive remedies consist of "the lesser of (I) $300.00 or (II) six (6) times our monthly monitoring fee." Id. "This amount is the sole remedy "no matter how the loss, damage, injury or other consequence is caused, even if caused by our negligence, gross negligence, breach of contract, strict liability, . . . or other fault." Id. The Amendments do not contain any language altering the Monitoring Contract's one-year limitation on the time to bring suit. Id.

On January 27, 2009, around 11:00 p.m., a vehicle in the Leones' garage caught fire. Compl., ¶ 15. The fire alarm system installed by Protection One never sounded at the Leones' residence, and Protection One's central monitoring station never received an alarm signal from the residence. Compl., ¶ 17. As a consequence, Protection One never notified the local fire department of the fire. Id. The fire substantially damaged and destroyed the real and personal property of the Leones. Compl., ¶ 18. If Protection One had notified the fire department of the blaze, the fire department would have responded more swiftly, and the fire would not have caused as much damage. Id.

An investigation later revealed that the fire originated in the engine compartment of a vehicle in the Leones' garage. Compl., ¶ 19. National Surety issued payments to the Leones and now acts as subrogee, seeking to enforce any claims the Leones might have against Protection One. Compl., ¶¶ 21-22.

## IV.  DISCUSSION

In this converted Motion, Protection One seeks summary judgment on Counts Three through Five of the Complaint, which sound in negligence (Count Three), breach of warranties (Count Four), and breach of contract (Count Five).

### A. Breach of Contract and Breach of Warranties

Protection One contends that Count Four (breach of warranties) and Count Five (breach of contract) fail to state a claim against Protection One because the Agreement contained a one-year limit on the time to sue, and National Surety failed to file this action within the required time. Protection One further argues that the Agreement contains a waiver of the Leones' right to subrogate to National Surety. Because the court finds the one-year time limitation enforceable, the court declines to address whether the waiver of subrogation provision applies.

#### 1. Connecticut Home Solicitation Act

National Surety argues that the Connecticut Home Solicitation Act, Conn. Gen. Stat. § 42-135a, prevents the Monitoring Contract from being enforced against National Surety. See Mem. in Opp. at 7-8. Specifically, National Surety contends that the Notice is not in the required minimum type size of ten points; that the Notice is not in bold; and that the contract does not contain the name of the seller, the seller's address, the date of the transaction, or the date by which the buyer may give notice of cancelation. See

10

Conn. Gen. Stat. § 42-135a(1). These contentions lack merit. It is undisputed that the Monitoring Contract contains the language required by the statute. The language is provided in all capital letters. National Surety does not dispute that the Monitoring Contract was originally on legal sized paper but was shrunk to letter size for archival purposes. Protection One's 56(a)(1), ¶ 23. Accounting for such scaling, it appears that the required notice was provided in an adequate size font.

Even if the notice deviated slightly from the provisions of the Connecticut Home Solicitation Act, those deviations would be of "a minor and highly technical nature" and would not have resulted in a lack of notice to the Leones that they had a right to cancel the contract within three days of its signing. See Wright Brothers Builders, Inc. v. Dowling, 247 Conn. 218, 232 (1998) (applying Connecticut Home Improvement Act, Conn. Gen. Stat. § 20-418 et seq, which incorporate the relevant provisions of the Connecticut Home Solicitation Act). Finally, National Surety's assertions that the Monitoring Contract does not contain the name of the seller, the seller's address, the date of the transaction, or the date by which the buyer may give notice of cancellation are baseless: even a cursory review of the Monitoring Contract reveals this information.

National Surety further argues that there is no indication in the submitted exhibit that the Leones were provided a duplicate copy of the Notice of Cancellation or that a Westec Security Services representative orally informed the Leones of their right to cancel, as required under the statute. See Mem. in Opp., at 7-8; Conn. Gen. Stat. § 42-135a(5). Even if the court assumed that the Leones were not provided a duplicate copy of the Notice of Cancellation or that the Westec Security Services representative never orally informed the Leones of their right to cancel, the original five year term of the

Monitoring Contract had already expired at the time of the fire, and the Leones had elected to renew the agreement. Any prejudice the Leones could have suffered from the alleged failure to provide notice of the right to cancel was extinguished when the original term of the contract expired, and the Leones had the right to decline to renew. Instead, the Leones accepted services from Protection One (and its predecessor, Westec Security Services) for more than seven years before the fire. Therefore, National Surety has failed to come forward with evidence to create a material issue of fact with regard to its claim that the contract is unenforceable or void due to violations of the Connecticut Home Solicitation Act.

2. One-Year Time Limitation

For more than one hundred years, Connecticut courts have concluded that contractual provisions requiring that any action arising under a contract be brought within a limited time are valid and enforceable. See Chichester v. New Hampshire Fire Ins. Co., 74 Conn. 510 (1902) (enforcing a time bar in a fire insurance contract); see also Monteiro v. American Home Assurance Co., 177 Conn. 281 (1979) (same). Although time limitation provisions are most frequently upheld in cases involving insurance contracts, Connecticut courts have held them enforceable in other types of contracts. See e.g., State v. Lombardo Brothers Mason Contractors, Inc., 51 Conn. Supp. 265, 276-86 (2009) (enforcing a time bar in an action by the State of Connecticut for breach of a construction management services contract); Air Brake Sys., Inc. v. TUV Rheinland of N. Am., Inc., 699 F. Supp. 2d 462, 471-73 (D. Conn. 2010) (enforcing a time bar in an action arising under a testing services contract).

In this case, the Agreement required that any action against Protection One be commenced within one year "after either the cause of action accrued or the act, omission, or event occurred from which the action arises, whichever is earlier." Monitoring Contract, at 2, § 16. The fire destroying the Leones' house occurred on January 27, 2009. National Surety did not file this action until August 23, 2010, nearly nineteen months after "the act, omission, or event occurred" from which this action arises. Because the court finds that the time limitation is enforceable, and National Surety failed to file this case within the required time, the court grants Protection One's converted Motion for Summary Judgment as to Count Four and Count Five.

    B.    <u>Negligence</u>

Protection One argues that the time limitation clause in the Monitoring Contract also applies to National Surety's claim for negligence. "[T]he existence of a duty of care is an essential element of negligence. A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." <u>Sturm v. Harb Development, LLC</u>, 298 Conn. 124, 139-40 (2010). "[T]he determination of whether a duty exists between individuals is a question of law." <u>Sevigny v. Dibble Hollow Condominimum Assoc., Inc.</u>, 76 Conn. App. 306, 317 (2003). In this case, National Surety has only alleged facts that support a duty of care arising from the contract between the Leones and Protection One. National Surety does not allege any relationship between the Leones and Protection One outside of the Agreement.

The Agreement contains several provisions limiting Protection One's liability for negligence. Foremost among those provisions is the one-year limitation on the time to bring any action, legal or equitable, against Protection One. Monitoring Contract, at 2, § 16. Both the Monitoring Contract and the Amendments make clear that the contractual limitations on liability are intended to extend to claims of negligence. See Monitoring Contract, at 2, § 16; First Amendment, at 2; Second Amendment, at 2.

Clauses limiting an alarm company's liability for failure of an alarm system are generally enforceable. See Western Alliance Insurance Co. v. Wells Fargo Alarm Servs. Inc., 965 F. Supp. 271 (D. Conn. 1997). "[I]t appears that all of the courts that have considered the validity of limitation-of-liability clauses in contracts for the provision of fire alarm systems have found those clauses to be permissible." Leon's Bakery, Inc. v. Grinnell Corp., 990 F.2d 44, 48 (2d Cir. 1993). In the context of exculpatory clauses in a burglar alarm service agreement, the district court has held that:

> [E]ven where the contract is not only for the sale and installation of a burglar alarm system but is also for its maintenance and monitoring, if the fee paid is not sufficiently high to include a premium for theft insurance, a clause limiting the alarm service company's liability in the event the alarm system does not function properly is not unconscionable.

Western Alliance Insurance Co., 965 F. Supp. at 275 (quoting Leon's Bakery, 990 F.2d at 49). "[T]he rationale for permitting the provider of a burglar alarm system to limit its liability is equally applicable to the provider of a fire alarm system." Leon's Bakery, 990 F.2d at 49.

In this case, Protection One provided fire alarm services to the Leones for a fee unrelated to the value of their property. By signing the Monitoring Contract, the Leones agreed that Protection One is "not an insurer and that you [the Leones] must obtain

14

insurance, if any, covering personal injury and property loss or damage on your premises and that the payments provided for herein are based solely on the value of the services as set forth herein and are unrelated to the value of your property or the property of others that may be located at your premises." Monitoring Contract, at 2, § 14(A); see also First Amendment, at 2 ("WE ARE NOT AN INSURER OF YOU . . . OR YOUR PREMISES"); Second Amendment, at 2 (same). The Leones represented that they had adequate insurance to protect their premises and property. Id. No reasonable person could expect that the provider of a fire alarm service would, for a fee unrelated to the value of the property, undertake to provide insurance coverage should the alarm fail to function properly, as alleged in this case. See Leon's Bakery, 990 F.2d at 48-49 (citation omitted).

Given that reasonable limitations on liability are not unconscionable, that any duties of care Protection One owed to the Leones arose from a contract containing a valid limitation on the time to bring suit, and that the time to bring suit has expired, National Surety's claim for negligence is barred by the Agreement. Therefore, the court grants summary judgment on Count Three.

## V. CONCLUSION

For the foregoing reasons, Protection One's converted Motion for Summary Judgment **[Doc. No. 15]** is **granted** as to Counts Three, Four, and Five of the Complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 26th day of July, 2011.

                                              /s/ Janet C. Hall
                                             Janet C. Hall
                                             United States District Judge